IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PRESCOTT & RUBI PRESCOTT, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF KAMERON PRESCOTT, DECEASED | § § § § § § | CASE NO. 5:19-cv-01392 |
| Plaintiffs, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| BEXAR COUNTY, JAVIER SALAZAR, INDIVIDUALLY AND AS THE BEXAR COUNTY SHERIFF, JOHN AGUILLON, GEORGE HERRERA, JESSE ARIAS, AND JOHNNY LONGORIA | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COME NOW, Plaintiffs Christopher Prescott and Rubi Prescott, Individually and as Personal Representatives of Kameron Prescott, deceased, complaining of Defendants, Bexar County, Javier Salazar, Individually and as Acting Sheriff of the Bexar County Sheriff's Office ("Salazar"), Johnny Aguillon ("Aguillon"), individually and in his official capacity as a Bexar County sheriff deputy, George Herrera ("Herrera") individually and in his official capacity as a Bexar County sheriff deputy, Jesse Arias ("Arias") individually and in his official capacity as a Bexar County sheriff deputy, and Johnny Longoria ("Longoria"), individually and in his official capacity as a Bexar County reserved sheriff deputy, (hereinafter referred to as Defendants) and for cause of action, would respectfully show unto the Court and jury the following:

## I.   NATURE OF THE ACTION

1. This is an action brought by Plaintiffs pursuant to 42 U.S.C. §1983 against Bexar County, Bexar County Sheriff Salazar, and Deputies Aguillon, Herrera, Arias, and Reserve Deputy Johnny Longoria for the shooting and subsequent death of Kameron Prescott in violation of his individual rights under the Fourteenth Amendment of the United States Constitution. The actions alleged in this Complaint are of such a nature as to shock the conscience, and amount to gross negligence, arbitrariness, maliciousness, extreme recklessness, conscious and deliberate indifference, and/or wanton oppressiveness.

2. Plaintiffs are entitled to recover individually and as representatives for the Estate of Kameron Prescott to the full extent applicable by law under Texas Wrongful Death Statute, Texas Civil Practice and Remedies Code section 71.001, *et seq.*, Texas Survival Statute, Texas Civil Practice and Remedies Code section 71.021, and all other applicable laws (including but not limited to Texas bystander recovery laws) complaining of various acts listed below and for his wrongful death and survival cause of action.

3. In the alternative, Plaintiffs bring this action under the Texas Tort Claims Act (TTCA). Pursuant to Texas Civil Practice and Remedies Code 101.021, immunity from suit has been waived and, thus, Plaintiffs have a viable cause of action against Bexar County as specified below. Pursuant to the TTCA's election of remedies requirement, Plaintiffs' *state* causes of action are brought solely against Bexar County as specified below, as opposed to the deputies, individually.

## II. PARTIES

### a.   *Plaintiffs*

4. Plaintiff, Christopher Prescott, individually and as personal representative of the Estate of Kameron Prescott is a citizen of the United States and a resident of Schertz, Texas.

Christopher Prescott is the father of Kameron Prescott, decedent, and brings this wrongful-death action as applied under 42 U.S.C. §1983 and pursuant to the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.001, et seq., Texas Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.021, and all other applicable laws complaining of various acts listed below and for Kameron's wrongful death and survival cause of action and as the parent of Kameron Prescott, who at the time of his death was a resident of Cibolo, Texas.

5. Plaintiff, Rubi Prescott, individually and as personal representative of the Estate of Kameron Prescott is a citizen of the United States and a resident of Cibolo, Texas. Rubi Prescott is the mother of Kameron Prescott, decedent, and brings this wrongful-death action as applied under 42 U.S.C. §1983 and pursuant to the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.001, et seq., Texas Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.021, and all other applicable laws complaining of various acts listed below and for Kameron's wrongful death and survival cause of action and as the parent of Kameron Prescott, who at the time of his death was a resident of Cibolo, Texas.

    **b.**    **Entities**

6. Defendant Bexar County is a political subdivision of the State of Texas. Bexar County Sherriff's Office is a servient political agency of Bexar County.

7. Bexar County Commissioners Court funds and operates Bexar County Sheriff's Office, while County Manager Smith and Judge Nelson Wolff serves as the County's chief administrators.

8. The County Manager is responsible for carrying out the actions and policies of the Commissioners Court by overseeing the day-to-day operations of the county.

9. The Commissioners Court relies on the County Manager and County Judge to provide them with professional advice before they take action on a specific issue.

10. County Manager Smith, along with County Judge Wolff, Commissioners Court, former Sheriff Pamerleau, and Sheriff Salazar are responsible for the implantation of the Sheriff Department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

11. Bexar County Sheriff's Office is also responsible for preventative, investigative, enforcement services and assuring safety for all citizens of Bexar County.

12. Bexar County may be served by and through its registered agent, County Judge Nelson Wolff, at the Bexar County Commissioners' Court at 101 W. Nueva, Suite #1019, San Antonio, Texas 78205 or at 100 Dolorosa, San Antonio, Texas 78205.

13. Additional service is being made on District Attorney Joe Gonzales at 101 W. Nueva, 4th Floor, San Antonio, Texas 78205.

14. Defendant Bexar County Sheriff Javier Salazar may be served at 200 North Comal Street, San Antonio, Texas 78207, or wherever he may be found.

### c. Individual Defendants

15. Defendant John Aguillon is a resident of San Antonio, Texas, and at all times material herein was a sheriff deputy acting in the course and scope of his employment for BCSO and may be served at his place of employment at the Bexar County Sheriff's office at 200 North Comal Street, San Antonio, Texas 78207 or wherever he may be found.

16. Defendant George Herrera is a resident of San Antonio, Texas, and at all times material herein was a sheriff deputy acting in the course and scope of his employment for BCSO and may be served at his place of employment at the Bexar County Sheriff's office at 200 North Comal Street, San Antonio, Texas 78207 or wherever he may be found.

17. Defendant Jesse Arias is a resident of San Antonio, Texas, and at all times material herein was a sheriff deputy acting in the course and scope of his employment for BCSO and may

be served at his place of employment at the Bexar County Sheriff's office at 200 North Comal Street, San Antonio, Texas 78207 or wherever he may be found.

18. Defendant Johnny Longoria is a resident of San Antonio, Texas, and at all times material herein was a sheriff deputy acting in the course and scope of his employment for BCSO and may be served at his place of employment at the Bexar County Sheriff's office at 200 North Comal Street, San Antonio, Texas 78207 or wherever he may be found.

### III. JURISDICTION AND VENUE

19. Jurisdiction exists in the Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent, Kameron Prescott, by constitutional and statutory provisions.

20. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 20 U.S.C. §1367 to adjudicate pendent claims arising under the laws of the State of Texas.

21. Venue is proper in this Court because the causes of action occurred within the Western District of Texas, San Antonio Division.

### IV. FACTS

22. On or about December 21, 2017, Kameron Prescott, a minor, was visiting his father, Christopher Prescott, at Mr. Prescott's residence located at 125 Peach Lane, Schertz, Texas 78154, which is within the Pecan Grove Mobile Home Community. This community consists of approximately 150 individual mobile homes, with numerous residents and visitors.

23. While Kameron Prescott was at his father's residence, Deputies Aguillon, Herrera, Arias, Longoria, and other Bexar County Sheriff deputies were in pursuit of Amanda Jones.

24. This pursuit had been on-going for over an hour, and began after a local bounty hunter reported Amanda Jones to the Bexar County Sheriff's Office. Jones had outstanding warrants for fraud and credit card abuse.

25. During this pursuit, Amanda Jones, who did not know the Plaintiffs, arrived at the 125 Peach Lane location, opened the front screen door, and walked into Christopher Prescott's residence. Kameron Prescott, Mr. Prescott's six-year-old son, was in his room at the time.

26. Christopher Prescott, who was sitting in his living room, asked Amanda Jones to leave the residence.

27. Amanda Jones held her hands up, stated, "You have kids and I do not want trouble."

28. Jones then turned around and walked out the front doorway of the 125 Peach Lane residence.

29. According to Bexar County, Jones "did not carry, exhibit, or use a deadly weapon."

30. After Jones walked out of the front doorway of the residence, Deputies Aguillon, Herrera, Arias, and Longoria surrounded the front porch of the occupied residence.

31. Upon information and belief, two of the deputies had AR-15 rifles, and two had .40 caliber handguns.

32. Deputies Aguillon, Herrera, Arias, and Longoria drew and pointed their weapons at Jones, and fired four rounds towards Jones and the occupied residence. Jones then slumped and fell forward.

33. After this round of gunfire, and after several seconds elapsed, the deputies fired numerous more rounds towards Jones and the occupied residence.

34. In total, the deputies fired at least eighteen rounds towards Jones and the occupied residence. Most of these rounds were .223 caliber. Numerous rounds pierced the exterior of the

residence and penetrated into the home. Six-year-old Kameron Prescott, who was in the hallway adjacent to his bedroom, was struck by the deputies' gunfire.

35. After the gunfire had subsided, Christopher Prescott heard his son Kameron cry, "Ouch, Daddy, ouch."

36. Christopher Prescott was able to see Kameron laying in the middle of the hall, and he wanted to go check on him.

37. At that point, several deputies entered the residence, and detained Christopher Prescott in handcuffs and others went to assist Kameron who had been shot during the gunfire.

38. Kameron was transported to University Hospital where he was pronounced dead.

39. An autopsy found that two projectiles entered Kameron's body, which caused his death.

## V. COUNT I: CIVIL RIGHTS CLAIM AGAINST THE DEPUTIES

40. The Civil Rights Acts, a codified at 42 U.S.C. §1983, provides as follows;

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. §1983.

41. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

42. Plaintiffs bring a claim against the Defendant Deputies Aguillon, Herrera, Arias, and Longoria, individually, pursuant to 42 U.S.C. §1983. At all times relevant, the Defendant Deputies were acting under color of the law.

43. Plaintiffs would show that the Defendant Deputies Aguillon, Herrera, Arias, and Longoria denied Kameron Prescott his right to be free from deprivation of life without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Further, Kameron Prescott had a substantive due process right to life and liberty under the United States Constitution. The actions of the deputies deprived him of that right.

44. The conduct of the deputies in question shocks the conscience. The deputies fired at least eighteen rounds towards Jones as she stood on a porch of an occupied mobile home unit, in the middle of a mobile home park, which housed hundreds of residents. The deputies opened fire even though, according to Bexar County, Jones "did not carry, exhibit, or use a deadly weapon."

45. Additionally, upon information and belief, the deputies opened fire on Jones a second time after whatever threat she may have presented had been neutralized. The decision to open fire a second time under the circumstances shocks the conscience.

46. Defendant Deputies knew and should have known of the extreme and substantial risk to the public and the occupants of 125 Peach Lane when the deputies decided to fire at least eighteen rounds at Amanda Jones and the residence.

47. Defendant Deputies consciously disregarded a substantial risk to innocent persons through their use of force that amounted to conduct that shocks the conscious, and amounts to gross negligence, arbitrariness, maliciousness, extreme recklessness, conscious and deliberate indifference, and/or wanton oppressiveness.

48. Even after ample opportunity to deliberate a plan of action over the course of a lengthy pursuit resulting in multiple encounters with Amanda Jones, Defendant deputies

deliberately, and in collective orchestration, discharged AR15 rifles and handguns in the middle of the day within a mobile home community.

49. Under the given circumstances, any reasonable officer would have known the high probability of innocent bystanders present in the proximate vicinity, let alone the residence directly behind the field of fire.

50. The conduct, acts, and omissions of the deputies proximately caused Kameron's death and the damages of the Plaintiffs.

### VI. COUNT II: CIVIL RIGHTS CLAIM AGAINST BEXAR COUNTY & POLICY MAKERS

51. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

52. The deputies in question were employed by the Bexar County Sheriff's Office, and were acting under color of law.

53. The individual deputies committed constitutional violations as against Kameron Prescott as set forth above.

54. The individual deputies also committed a constitutional violation as against Amanda Jones, due to their excessive use of force in violation of the Fourth Amendment and/or the Fourteenth Amendment. The deputies fired at least eighteen rounds at Amanda Jones and the residence even though Jones "did not carry, exhibit, or use a deadly weapon."

55. These constitutional violations proximately caused and did cause Kameron's death and the damages of the Plaintiffs.

56. Upon information and belief, in the time period leading up to this incident, Bexar County, the Bexar County Sheriff's Office, and Sheriff Salazar showed deliberate indifference towards constitutionally-inadequate training and policies pertaining to the use of deadly force.

Case 5:19-cv-01392   Document 1   Filed 12/02/19   Page 10 of 16

57. According to Sheriff Salazar, his administration knew from day one that additional training was needed in these areas. Sheriff Salazar also acknowledged that BSCO's policies, which would include use-of-force policies, are wordy, confusing, and ambiguous. As he explained, "[w]hen you start getting into ambiguities in your policy, I think you're asking for trouble."

58. Bexar County and its policy makers, including Sheriff Salazar, knew or should have known, prior to the incident, of inadequate training and policies and/or customs on the use of force, the use of deadly force, and proper foot pursuits.

59. Bexar County, its policy makers, and Sheriff Salazar were deliberately indifferent to these inadequate training and policies and customs. Upon information and belief, Bexar County, its policy makers, and Sheriff Salazar knew of these inadequacies in advance of this incident. Upon information and belief, it was apparent and obvious that the likely consequences of not enacting or adopting adequate procedures and training would work to deprive members of the public of constitutional rights. Bexar County, its policy makers, and Sheriff Salazar failed to modify these policies or institute sufficient training until after the incident made the basis of this lawsuit.

60. The inadequacies involving training, policies and customs were moving forces leading to the constitutional violations as set forth above. At all times relevant to this incident, the Defendant Deputies Aguillon, Herrera, Arias, and Longoria were acting pursuant to the training, customs, practices, and policies of Bexar County and the BCSO in regard to foot pursuits, the use of force, and the use of deadly force.

61. The above-mentioned policies and the Defendants' failure to employ proper policies and training were the proximate cause and moving forces behind the violations of

Kameron Prescott's constitutional rights, the violations of Amanda Jones' constitutional rights, and the unnecessary death of Kameron Prescott.

62. Defendants Bexar County and Sheriff Salazar are liable under 42 U.S.C. § 1983 for the reasons set forth above.

### VII. COUNT III: SUPERVISORY LIABILITY DEFENDANT SHERIFF JAVIER SALAZAR

63. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

64. As Sheriff, Chief Law Enforcement Officer, and individual in charge of policy decisions for Bexar County Sheriff Department, Defendant Sheriff Salazar had the duty to ensure officers like Defendant Deputies Aguillon, Herrera, Arias, and Longoria had received proper training on foot pursuits and the use of deadly force, and that an adequate policy was in place to guide deputies in these procedures.

65. Sheriff Salazar knew or should have known that the training of deputies and that use-of-force policies were inadequate for some time prior to this incident. According to Sheriff Salazar, his administration knew from the first day he took office that additional training was needed. He also acknowledged that BSCO's policies, which would include use-of-force policies, are wordy and confusing and that "[w]hen you start getting into ambiguities in your policy, I think you're asking for trouble."

66. As discussed above, the Deputies in question engaged in constitutional violations under the Fourteenth and/or Fourth Amendments.

67. Defendant Sheriff Salazar's subordinate deputies, Aguillon, Herrera, Arias, and Longoria, were under his supervision when they violated the constitutional rights of Kameron Prescott and/or Amanda Jones.

68. Defendant Sheriff Salazar implemented and/or failed to adopt adequate policies, failed to train, and failed to appropriately supervise his subordinates on the use of force, use of deadly force, and foot pursuits. Upon information and belief, it was apparent and obvious that the likely consequences of not enacting or adopting adequate procedures and training in these areas would work to deprive members of the public of constitutional rights.

69. The implementation of these policies or failure thereof served as a proximate cause and the moving force behind the violation of the constitutional rights of Kameron Prescott, the violation of the constitutional rights of Amanda Jones, and the death of Kameron Prescott.

70. Sheriff Salazar failed to act and acted with deliberate indifference. Sheriff Salazar knew and should have known that such particular omissions in these policies and the training program would cause his subordinates to violate the constitutional rights of members of the public they encounter, but nevertheless chose to allow these policies and inadequate training to remain in place until after the incident made the basis of this lawsuit.

71. Defendant Sheriff Salazar, as Chief Law Enforcement Officer, has policymaking authority for Bexar County Sheriff Office. He possesses the final authority to establish the policy with respect to the policies and training of all Bexar County Sheriff Office deputies.

72. As Chief Law Enforcement Officer, Defendant Sheriff Salazar had a duty to ensure that officers in the Bexar County Sheriff's Office were adequately trained in dealing when to safely discharge a firearm, especially within a mobile home community. He also had a duty to ensure appropriate policies were in place to guide these deputies.

73. Defendants Sheriff Salazar is liable under 42 U.S.C. § 1983 for the reasons set forth above.

## VIII. COUNT IV: STATE CAUSES OF ACTION

74. Pleading in the alternative, Plaintiffs bring their state cause of action (which this Court has jurisdiction over pursuant to 20 U.S.C. §1367) pursuant to Texas Civil Practice and Remedies Code Section 101.021, as the Texas Tort Claims Act (TTCA) waives Defendant's sovereign immunity for claims involving personal injury, death, or property damage caused by the negligent operation or use of tangible personal property by BCSO's employees, if those employee(s) would be personally liable to Plaintiffs under Texas law.

75. Pursuant to the TTCA's election of remedies requirement, Plaintiffs' *state* cause of action is brought solely against Bexar County, as opposed to the deputies individually.

76. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

77. The deputies in question, while acting in their scope of employment with Bexar County, negligently used tangible personal property (a gun), which proximately caused the death of Kameron Prescott and the damages to the Plaintiffs. The deputies would have been personally liable to the Plaintiffs under Texas law.

78. Plaintiffs timely provided notice under the TTCA. Alternatively, Bexar County had timely, actual notice of this claim and the circumstance of this case

79. No exception to the waiver of immunity bars this claim because no exception applies.

## IX. COUNT V: BYSTANDER INJURY-ALL DEFENDANTS

80. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

81. When Defendant Deputies Aguillon, Herrera, Arias, and Longoria discharged their firearms at the 125 Peach Lane residence, Christopher Prescott was inside his residence with his son Kameron Prescott. He heard his son state, "Ouch, Daddy, ouch" and collapse in the hallway. Christopher Prescott saw officers take Kameron Prescott out of the house and attempt to administer first aid. Christopher Prescott has suffered direct personal injury in the form of medical, funeral, and burial expenses, mental anguish, loss of companionship and society, and pecuniary loss.

82. As a direct and proximate result of the shooting of his six-year-old son in his presence, Plaintiff Christopher Prescott seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## X. DAMAGES & COSTS, ALL DEFENDANTS

83. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

84. Plaintiffs bring a survival claim against the Defendants on behalf of the Estate of Kameron Prescott. Additionally, Plaintiffs, the parents of Kameron Prescott, assert individual wrongful death claims against the Defendants.

85. Christopher and Rubi Prescott, as the parents of six-year-old Kameron Prescott, suffered and will continue to suffer significant emotional pain and anguish as a result of the death of their son.

86. Kameron Prescott was six (6) years old when he died; he was in good health, with a reasonable life expectancy of living at least 77 more years to age 84.

87. Defendants' acts and/or omissions were a proximate cause of the following injuries and damages suffered by Plaintiffs:

    a. Actual damages;

    b. Loss of affection, consortium, comfort, financial protection, affection and care;

c. Pain and suffering and mental anguish suffered by Kameron Prescott prior to his death;

d. Mental anguish and emotional distress suffered by Plaintiffs;

e. Loss of quality of life;

f. Loss of service;

g. Medical and funeral expenses;

h. Exemplary and punitive damages;

i. Pursuant to 42 U.S.C. §1988, and other applicable laws, reasonable attorney's fees for preparation and trial of this cause of action, and for its appeal, if required, and for expert fees;

j. Costs of court;

k. Prejudgment interest; and

l. Post judgment interest

## XI. CONDITIONS PRECEDENT

88. All conditions to Plaintiffs' recovery have been performed or have occurred.

## XII. TRIAL BY JURY

89. Plaintiffs demand a trial by jury.

## XIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment and post-judgment interest at the legal rate, costs of court, attorney's fees; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

CROSLEY LAW FIRM, P.C.
3303 Oakwell Court, Suite 200
San Antonio, Texas 78218
Telephone No.: (210) 529-3000
Facsimile No.: (210) 444-1561
Service Email: service@crosleylaw.com

By: */s/ Thomas A. Crosley*
    Thomas A. Crosley
    Texas Bar No. 00783902
    tom@crosleylaw.com
    Shawn Mechler
    Texas Bar No. 24078989
    shawn@crosleylaw.com

ATTORNEYS FOR PLAINTIFF
CHRISTOPHER PRESCOTT,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
KAMERON PRESCOTT, DECEASED

-and-

THE KRIST LAW FIRM, P.C.
The Krist Building
17100 El Camino Real
Houston, Texas 77058
Telephone No.: (281) 283-8500
Facsimile No.: (281) 488-3489

By: */s/ Scott C. Krist*
    Scott C. Krist
    Texas Bar No. 11727900
    skrist@kristlaw.com
    Alex W. Horton
    Texas Bar No. 24065448
    ahortn@kristlaw.com

ATTORNEYS FOR PLAINTIFF
RUBI PRESCOTT INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF KAMERON
PRESCOTT, DECEASED