UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CHRISTOPHER PRESCOTT & RUBI
PRESCOTT, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVES
OF THE ESTATE OF KAMERON
PRESCOTT, DECEASED
        Plaintiffs,

v.                                                 No. 5:19-CV-01392-JKP-RBF

BEXAR COUNTY, JAVIER SALAZAR,
INDIVIDUALLY AND AS THE BEXAR
COUNTY SHERIFF, JOHN AGUILLON,
GEORGE HERRERA, JESSE ARIAS,
AND JOHNNY LONGORIA
        Defendants,

v.

RENE JONES, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATE OF AMANDA JONES, DECEASED
        Movant.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Defendants Aguillon, Herrera, Arias and Longoria's Opposed Motion to Dismiss Plaintiffs' Second Amended Complaint*, ECF No. 63. The motion is ripe for ruling. For the reasons that follow, the Court denies the motion.

## I. BACKGROUND

Plaintiffs Christopher Prescott and Rubi Prescott[1] initiated this action on December 2, 2019, pursuant to 42 U.S.C. § 1983 and the Texas wrongful death and survival statutes, Tex. Civ. Prac. & Rem. Code §§ 71.001 & 71.021. Christopher and Rubi bring their claims individually and as personal representatives of their son, Kameron Prescott, who was killed on December 21,

---

[1] The Court typically refers to parties by their last names. Because they share the same last name, the Court refers to the Prescott family as Christopher, Rubi, and Kameron and the Jones family as Rene and Amanda.

2017. ECF No. 1. On December 6, 2019, the Court granted Rene Jones' motion to intervene. Rene brings claims individually and as personal representative of the Estate of Amanda Jones, asserting causes of action pursuant to § 1983 and the Texas wrongful death and survival statutes. Amanda was killed on December 21, 2017. ECF No. 18; text order of Dec. 6, 2019.

The Court granted Christopher and Rubi leave to amend their complaint on March 4, 2020. ECF No. 36; text order of Mar. 4, 2020. The Court entered a scheduling order on July 15, 2020, setting July 15, 2021 as the dispositive motion deadline. ECF No. 59. Christopher and Rubi filed their second amended complaint, the operative pleading herein, on July 27, 2020. ECF No. 62. Defendants Aguillon, Herrera, Arias, and Longoria, filed their motion to dismiss on August 7, 2020. ECF No. 63.

The second amended complaint asserts causes of action against Bexar County Sheriff's Office Deputies Aguillon, Herrera, Arias, and Reserve Deputy Longoria pursuant to § 1983 and the Texas wrongful death and survival statutes. Christopher and Rubi allege the officers discharged their weapons recklessly, in a manner that "shocks the conscience", and with deliberate indifference in violation of Texas law and the Fourth and Fourteenth Amendments, resulting in six-year-old Kameron's death. ECF No. 62 at 8-10. The Deputy-Defendants assert qualified immunity arguing that they did not violate Kameron's constitutional rights and their use of force did not violate clearly established law. ECF No. 63 at 6-7.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from

conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

### III. APPLICABLE LAW

**42 U.S.C. § 1983**

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3034317 (N.D. Tex. July 17, 2017); *accord Calhoun v. Mejia*, No. A-08-CA-135-SS, 2008 WL 11411254, at *3 (W.D. Tex. May 20, 2008) (quoting § 1983). And when a "motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)), *cert. denied*, 138 S. Ct. 739 (2018).

**Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (quoting *Mullenix* v. *Luna*, 577 U. S. 7, 11 (2015) (per curiam) (quoting *Pearson* v. *Callahan*, 555 U. S. 223, 231 (2009))). When qualified immunity is asserted by a law enforcement officer, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001)).

When determining whether an official can claim qualified immunity, courts typically engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id.* (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* However, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at  236.

The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court "does not require a case

directly on point . . . but existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam).

## IV. FACTUAL ALLEGATIONS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the pleading. When analyzing such motion, courts accept the well-pled factual allegations as true and views those facts in the light most favorable to the nonmovant. *Severance*, 566 F.3d at 501. The Fifth Circuit is clear that "even in the context of qualified immunity, 'the facts alleged' must be '[t]aken in the light most favorable to the party asserting the injury.'" *Anderson v Valdez*, 845 F3d 580, 600 (5th Cir 2016) (quoting *Tolan v Cotton* 572 US 650, 655-56 (2014)). With the applicable standard in mind, the second amended complaint alleges the following.

On December 21, 2017, Deputies Aguillon, Herrera, and Arias, Reserve Deputy Longoria, and other Bexar County Sheriff deputies were in pursuit of Amanda. A local bounty hunter had reported Amanda—who had outstanding warrants for fraud and credit card abuse—to the Bexar County Sheriff's Office. The pursuit was so lengthy that a DPS helicopter helping to locate Amanda had to refuel and water, juices, and snacks were brought in for the deputies on the ground.

When the deputies located Amanda, she was in the Pecan Grove Mobile Home Community in Schertz, Texas, coming out of the mobile home at 125 Peach Lane. An individual in a DPS helicopter told the deputies, "I can't see any weapons." Amanda stood on the front porch of 125 Peach Lane as the deputies surrounded her. A K9 deputy stood ready but—armed with AR-15 rifles and 40-caliber handguns—the deputies fired four rounds. Amanda slumped and fell forward, fatally wounded. Several seconds passed, then the deputies fired another

fourteen rounds—Deputy Arias firing all but one .223 round from his AR-15—piercing the thin sheet metal exterior and screen door of the home.

That night, six-year-old Kameron was visiting his father, Christopher, at 125 Peach Tree. Kameron was playing in his room when a stranger walked into the house unannounced. Christopher, sitting on the couch in the living room with his niece, asked the stranger to leave. Amanda held her hands up, stated, "You have kids and I do not want trouble," turned around, and walked out the door.

Amanda was unarmed. Kameron's training-wheeled bicycle and toys littered the front porch where Amanda was standing. A vehicle was parked in the driveway. As bullets pierced their home, Kameron cried out, "Ouch, Daddy, ouch!" Before Christopher could reach his son, deputies entered his home, ordered Christopher to the ground, and handcuffed him. Christopher watched as deputies carried Kameron out and attempted to administer first-aid. Kameron was transported to University Hospital. Struck by two bullets, Kameron was pronounced dead on arrival. *See* ECF No. 62.

## V. ANALYSIS

At the outset, this Court notes its agreement with its sister court in the Northern District of Texas that "a motion under Fed. R. Civ. P. 12(b)(6) is certainly a poor vehicle for resolving claims of qualified immunity." *See Reitz*, 2017 U.S. Dist. LEXIS 110673, 2017 WL 3046881, at *12. This is so, at least in part, because plaintiffs have no need to "anticipate the immunity defense" when filing their complaint. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *accord Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (holding that plaintiffs are not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12"). While "most cases should follow the typical sequence of an answer, followed by a Rule 7(a)

reply if necessary, and a Rule 12(c) or Rule 56 motion, the particulars of a case permit proper resolution of the qualified immunity issues through a Rule 12(b)(6) motion." *Reitz*, 2017 U.S. Dist. LEXIS 110673, 2017 WL 3046881, at *14. Naturally, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a motion to dismiss, plaintiffs carry this burden when their operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). Compliance with *Iqbal* and *Twombly* requires only that the facts plausibly allege a constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago,

> the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted); *accord McClendon*, 305 F.3d at 323. In other words, the opportunity for a movant to present its side of the story is summary judgment.

## A. Constitutional Violations

A claim for excessive force under the Fourth Amendment requires "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations and citation omitted). The determination of whether an officer's use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted). This includes "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)).

"[T]he Fourteenth Amendment protection against deprivation of life without due process of law is violated when police officers using deadly force, in *conscious disregard* of substantial risk of harm to innocent parties, kill an innocent third party." *Grandstaff v. Borger*, 767 F.2d 161, 167 (5th Cir. 1985) (emphasis in original) (citing *Garner*, 471 U.S. at 9). To prove such a violation, "plaintiffs are required to demonstrate that the State's conduct 'shocks the conscience.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To meet this standard, the

state actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.*, 523 U.S. at 847 n.8.

"Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook Cty.*, 506 U.S. 56, 70 (1992). When multiple violations are alleged, the court must "examine each constitutional provision in turn." *Id.* (citing *Hudson* v. *Palmer*, 468 U.S. 517 (1984) (Fourth Amendment and Fourteenth Amendment Due Process Clause); *Ingraham* v. *Wright*, 430 U.S. 651 (1977) (Eighth Amendment and Fourteenth Amendment Due Process Clause)). Plaintiffs contend their claims are properly analyzed under the Fourteenth Amendment "given that the deputies did not intend to shoot (or seize) Kameron." ECF No. 65 at 15. The Supreme Court "[limits] liability for excessive force to situations in which the use of force was the result of an intentional and knowing act." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (in which the Court also "leave[s] open the possibility of including a 'reckless' act as well"). As pled, the deputies' actions toward Kameron were not negligent, accidental, or unintended but a knowing and intentional application of force. Accordingly, the Court analyses qualified immunity under the Fourth and Fourteenth Amendment.

**1. Fourth Amendment**

The second amended complaint plausibly alleges the deputies intentionally and knowingly fired at and into an occupied home from which no threat emanated. First, Amanda was unarmed: she held up her hands inside Christopher's home and said she did not want any trouble and communication from the DPS helicopter informed the deputies that Amanda was unarmed. Second, Kameron was playing in his room and Christopher and his niece were watching television. Thus, the deputies faced no threat from either outside or inside the home.

Plaintiffs further allege facts that show Kameron was not merely an unlucky passerby who was the victim of an unintentional harm. As alleged, the deputies did not inadvertently shoot at the mobile home. Christopher and his niece were watching television just inside the front door, children's toys were strewn across the porch, and a car was in the driveway. Plaintiffs allege that a K9 deputy was ready and waiting to be deployed, but the Defendant-Deputies chose instead to fire their weapons at the occupied home. Accepting the allegations as true, Kameron suffered "an injury" (death), "which resulted directly and only from the use of force that was clearly excessive to the need" (the suspect was unarmed, surrounded by deputies, and a K9 stood ready); "and the excessiveness of which was objectively unreasonable" (deputies continued to fire after Amanda was incapacitated). *Pena*, 879 F.3d at 619. Thus, the second amended complaint alleges a Fourth Amendment violation sufficient to survive a motion to dismiss.

**2. Fourteenth Amendment**

The second amended complaint plausibly alleges that the manner in which the deputies fired and the number of shots fired at the home shocks the contemporary conscious. *See Lewis*, 523 U.S. 833 at 846; *Grandstaff*, 767 F.2d at 167. To wit: Deputies Aguillon, Herrera, Arias, and Longoria drew and pointed their weapons at Amanda and fired four rounds towards her and the occupied residence. She slumped and fell forward. Several seconds passed and then, the deputies fired again even though it was obvious that Amanda was incapacitated as a result of the first four shots. In total, the deputies fired at least eighteen rounds at and into the occupied residence, many at close range. Most of these rounds were .223 caliber. ECF No. 62, pars. 35-37. Accepting these allegations as true, the second amended complaint alleges a Fourteenth Amendment violation sufficient to survive a motion to dismiss.

**B. Clearly Established Law**

The Supreme Court has explained that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee* v. *Garner*, 471 U.S. 1, 11 (1985). It has also noted that in the universe of qualified immunity cases, some will present constitutional violations so "obvious" that there need not be a case directly on point for the right to be clearly established. *Hope* v. *Pelzer*, 536 U.S. 730, 738 (2002). As alleged, the facts in this case do not fall in the "hazy border between excessive and acceptable force." *Saucier,* 533 U.S. at 206. Accepting Plaintiffs' account, the violation of Kameron's constitutional rights would have been "obvious . . . even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam).

Under the circumstances alleged, no deputy could have concluded that it was constitutionally permissible to fire on an unarmed suspect who posed no threat, that they could continue to fire at someone who is objectively incapacitated, or that they could fire their weapons repeatedly at and into an occupied home from which no threat emanated. *See, e.g., Garner*, 471 U.S. 1, 21 (holding it was constitutionally impermissible to shoot an unarmed suspect who posed no immediate threat merely to prevent escape); *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015) (holding that "[s]hooting a clearly incapacitated suspect is inconsistent with *Garner*'s command that deadly force is unconstitutional when a 'suspect poses no immediate threat to the officer and no threat to others.'"); *Mason v. Faul*, 929 F.3d 762, 765 (5th Cir. 2019) (confirming that the unconstitutionality of shooting a suspect who does not pose a danger is clearly established); *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 733 (5th Cir. 2018) (in a Fourth Amendment excessive force case, the Fifth Circuit found that "choking, punching, and kicking" a suspect who did not resist arrest or pose an immediate threat was an

"obvious case" in which "the *Graham* excessive-force factors themselves 'clearly establish[ed] the answer, even without a body of relevant case law.'").

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** *Defendants Aguillon, Herrera, Arias and Longoria's Opposed Motion to Dismiss Plaintiffs' Second Amended Complaint* (ECF No. 63).

**It is so ORDERED this 29th day of January 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**