UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**CHRISTOPHER PRESCOTT, et al.,**

   *Plaintiffs*,

v.                                                       No. SA-19-CV-1392-JKP-RBF

**BEXAR COUNTY, et al.,**

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss[1] (ECF No. 64) filed by Defendants Bexar County and Sheriff Javier Salazar ("Sheriff Salazar"). The motion is ripe for ruling. After due consideration of the motion, briefing, and applicable law, the Court denies the motion.

### I. BACKGROUND

In their Second Amended Complaint (ECF No. 62), Plaintiffs Christopher Prescott and Rubi Prescott[2] ("Plaintiffs") allege that on December 21, 2017, Bexar County Sheriff's Office ("BCSO") deputies pursued Amanda Jones ("Amanda")—who had outstanding warrants for fraud and credit card abuse—locating her on the porch of Christopher's home. Even though Amanda was unarmed, the deputies discharged their weapons approximately eighteen times killing Amanda and six-year-old Kameron, who was inside. *ECF No. 62*.[3] Plaintiffs assert constitutional violations under 42 U.S.C. § 1983 and wrongful death and negligence claims under the Texas Tort Claims Act ("TTCA"). Defendants Bexar County and Sheriff Salazar move

---

[1] The Court has reduced the title of the motion to its essence.

[2] The Court typically refers to parties by their last names. Because they share the same last name, the Court refers to the Prescott family as Christopher, Rubi, and Kameron.

[3] *See also Prescott v. Bexar Cty.*, No. 5:19-CV-01392-JKP-RBF, 2021 U.S. Dist. LEXIS 17622, 2021 WL 308948 (W.D. Tex. Jan. 29, 2021).

to dismiss the TTCA claims under Fed. R. Civ. P. 12(b)(1) and the remaining claims under Fed. R. Civ. P. 12(c), which applies the Fed. R. Civ. P. 12(b)(6) legal standard. Defendants also move to dismiss Plaintiffs' request for punitive damages and the individual Defendants as to the state law claims.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Rule 12(b)(1) challenges come in two forms: "facial" attacks and "factual" attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When the party challenging jurisdiction has not submitted evidence in support of its Rule 12(b)(1) motion to dismiss, the motion is a facial attack on plaintiffs' pleadings, and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. *Id.* A factual attack challenges the existence of subject matter jurisdiction in fact and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* In evaluating jurisdiction, a court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The burden of establishing subject matter jurisdiction rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). Courts typically address jurisdictional issues first because, without jurisdiction, the case can proceed no further. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6)

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim

showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.*; *Twombly*, 550 U.S. at 563 n.8.

In assessing a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint and any documents attached to the motion to dismiss referred to in the complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

**C. Rule 12(c)**

The standard for a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion filed under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

### III. MOTION TO DISMISS UNDER RULE 12(b)(1)

**A. Use or Misuse of Tangible Personal or Real Property Claim**

"Absent a valid statutory or constitutional waiver, trial courts lack subject-matter jurisdiction to adjudicate lawsuits against municipalities." *Suarez v. City of Tex. City*, 465

3

S.W.3d 623, 631 (Tex. 2015) (citations omitted). On the facts alleged in this case, Bexar County may be held liable for the negligent acts of the BCSO deputies if Kameron's death was "*caused by* a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021 (emphasis added). A deputy's firearm is tangible personal property. *Smith v. Tarrant Cty.*, 946 S.W.2d 496, 501 (Tex. App.—Fort Worth 1997, writ denied) (in which it was undisputed that a police officer's gun is tangible personal property); *accord Estate of Andres L. Gutierrez v. Trevino*, No. SA-10-CA-735-OG, 2011 U.S. Dist. LEXIS 170312, at *36, 2011 WL 13234716, at *12 (W.D. Tex. Jan. 13, 2011) (concluding that "[a] gun is considered tangible personal property for purposes of the TTCA").

To state a claim based on the use or misuse of non-defective tangible personal property, a plaintiff must allege: (1) that the property was used or misused by a government employee acting within the scope of his employment; and (2) that the use or misuse of the property was a contributing factor to the injury. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31-32 (Tex. 1983). Plaintiffs' satisfy the pleading requirements to state a claim for the use or misuse of non-defective tangible personal property, to wit: while in pursuit of Amanda, BCSO deputies fired their guns at an occupied home, which caused Kameron's death.

In addition to the pleading requirements above, a plaintiff must plead facts that, if proven, would show that the conduct is within the limited waiver of immunity and not excepted from waiver. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). The TTCA excepts intentional torts. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); Tex. Civ. Prac. and Rem. Code § 101.057(2). A plaintiff cannot circumvent the intentional tort exception under the TTCA by framing the claim as negligence. *Harris Cty. v. Cabazos*, 177 S.W.3d 105,

111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "Thus, 'if a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA.'" *Saenz v. City of El Paso*, 637 F. App'x 828, 830 (5th Cir. 2016) (per curiam) (quoting *Cabazos*, 177 S.W.3d at 111).

The facts alleged in the Second Amended Complaint are not yet sufficiently developed to determine whether Kameron's death was caused by conduct that was intentional or negligent. As pled, a reasonable jury could find Kameron's death was the result of intentional conduct that amounts to a battery, reckless conduct that amounts to assault, or negligent conduct that allows for a TTCA claim. The Court therefore DENIES the motion to dismiss Plaintiffs' claim for use or misuse of non-defective tangible personal property.

### IV. MOTION TO DISMISS UNDER RULE 12(c)

**A. Constitutional Claims**

In its recent Memorandum Opinion and Order denying the deputies' motion to dismiss, the Court found Plaintiffs plausibly alleged Fourth and Fourteenth Amendment claims. *See Prescott v. Bexar Cty.*, No. 5:19-CV-01392-JKP-RBF, 2021 U.S. Dist. LEXIS 17622, 2021 WL 308948 (W.D. Tex. Jan. 29, 2021). For the same reasons, the Court DENIES Defendants' motion to dismiss Plaintiffs' constitutional claims.

**B. Christopher Prescott's Bystander Claim**

In *Freeman v. Pasadena*, the Texas Supreme Court recognized a cause of action for mental anguish by bystanders who have witnessed the serious injury or death of a close family member, 744 S.W.2d 923 (Tex. 1988). As the court later summarized:

> Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These

5

> include suits for wrongful death . . . and actions by bystanders for a close family member's serious injury.

*City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997) (internal citations omitted). To state a bystander claim, a plaintiff must establish the factors adopted in *Freeman*:

> (1) Whether plaintiff was located near the scene of the accident *as contrasted with one who was a distance away from it*. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, *as contrasted with learning of the accident from others after its occurrence*. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Freeman*, 744 S.W.2d at 923-24 (emphasis in original) (quoting *Dillon v. Legg*, 68 Cal. 2d 728, 740 (1968)); *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985); *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 U.S. Dist. LEXIS 21211, at *19, 2021 WL 398842, at *3 (W.D. Tex. Feb. 3, 2021).

Christopher alleges facts in the Second Amended Complaint that state a bystander claim under Texas law sufficient to survive a motion to dismiss. To wit: Christopher was at the scene, he witnessed the incident, and he was closely related to Kameron. To recover on his bystander claim, Christopher must establish that the deputies negligently inflicted Kameron's fatal injury. *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993). As stated above, the facts are not yet sufficiently developed to determine whether Kameron's death was caused by intentional or negligent conduct. Accordingly, the Court DENIES the motion to dismiss Christopher Prescott's state law bystander claim.

As to Christopher's bystander claim under § 1983, the Fifth Circuit has stated that there "there is no constitutional right to be free from witnessing [] police action." *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985). It is on this basis that the Fifth Circuit requires bystander plaintiffs, "who claim a deprivation of constitutional rights, . . . to prove some

violation of their personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986).[4] For even where the claim "falls outside the specific protections of the Bill of Rights," a bystander "may still seek redress under the due process clause of the Fourteenth Amendment." *Petta v. Rivera*, 143 F.3d 895, 910 n.25 (5th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) for the proposition that in the Fourth Amendment context—no less than a prisoner, arrestee, or detainee—"an innocent bystander" has the constitutional right to "seek redress" for "an officer's excessive, unreasonable and outrageous use of deadly force"). In the Fifth Circuit, "personal rights" have been found where a plaintiff alleged s/he was (or became) the object of police action and where the plaintiff demonstrated a seizure, both of which are arguably found in the facts alleged by bystander Racheal in *Coon*. *See* n.4, *supra*.

In this case, Christopher alleges that the deputies drew and pointed their weapons at Amanda and fired four rounds towards her and Christopher's occupied residence. Amanda slumped and fell forward. Several seconds passed and then, the deputies fired again even though it was obvious that Amanda was incapacitated as a result of the first four shots. In total, the deputies fired at least eighteen rounds at and into the occupied residence, many at close range. Most of these rounds were .223 caliber. Christopher also allege that as bullets pierced their home, Kameron cried out, "Ouch, Daddy, ouch!" Before Christopher could reach his son,

---

[4] In *Coon*, the Fifth Circuit appears to use interchangeably the phrases "personal rights" and "personal loss." Addressing why one plaintiff had alleged sufficient "personal loss required for a constitutional claim," and another had not, the court stated:

> Dana and Racheal Coon, like all persons who claim a deprivation of constitutional rights, were required to prove some violation of their *personal rights*. . . . Whatever be their right as bystanders to recover under state tort law, we are persuaded that Racheal made the proof of *personal loss* required for a constitutional claim, but that Dana did not. There was no evidence that any act of the deputies was directed toward Dana; she was not directly involved in the shooting and was with the deputies when it occurred. Racheal, however, was in the trailer. There was evidence that Coon staggered into his trailer and while he was there attempted to protect Racheal from the gunfire, and there was evidence that deputy Gussberry fired a round of heavy buckshot into the trailer at that time.

*Coon*, 780 F.2d at 1160-61 (emphasis added).

7

deputies entered his home, ordered Christopher to the ground, and handcuffed him. Christopher watched as deputies carried Kameron out and attempted to administer first-aid. Kameron was transported to University Hospital where he was pronounced dead on arrival. *ECF No. 62*.

The additional facts that a television was on inside the home and a car was in the driveway allow the Court to draw the reasonable inference that the deputies knew or should have known that there were people inside Christopher's home. Thus, Christopher became the object of police action when deputies fired rounds into his home. And when the deputies entered his home, ordered him to the ground, and handcuffed him, a seizure occurred. The Court therefore concludes that Christopher has sufficiently alleged violations of his personal rights to avoid dismissal of his § 1983 bystander claim. Accordingly, the Court DENIES the motion to dismiss Christopher Prescott's § 1983 bystander claim.

## C. *Monell* Claim

"Municipalities face [§] 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . .'" *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, a plaintiff must plead facts that plausibly establish (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The policy element "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). To establish an inadequate training claim a

plaintiff must also allege deliberate indifference of the policymakers. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

Plaintiffs identify the pertinent policymaker as Sheriff Salazar. Plaintiffs complain of BCSO's use of force policy and a practice of inadequate training and supervision in the use of deadly force. Specifically, that Sheriff Salazar "acknowledged that he knew, prior to the incident, that the department's use-of-force and officer-involved shooting policies [were ambiguous]." *ECF No. 62, par. 64*. That the Department's use-of-force policy "did not include any provision encouraging de-escalation, including tactics that would reduce or eliminate the need to engage in deadly force." *Id., par. 68*. And that after the incident, Sheriff Salazar "mandated additional training for deputies, including training in de-escalation and defensive tactics." *Id., par. 66*. But there is no evidence that any new training was implemented or that any new policies included de-escalation provisions. *Id. pars. 67-68, 80*. Plaintiffs allege that BCSO deputies had previously used deadly force in circumstances similar to this case[5] and that one of the deputies involved in the shooting in this case was involved in a prior shooting incident. *Id. pars. 80-81*. And that after these prior shooting incidents, BCSO deputies received neither discipline nor remedial training. *Id. par. 82*.

Thus, Plaintiffs have sufficiently alleged a policy maker and a policy and practice. The alleged inadequacies are the deficiency in training and supervising deputies in de-escalation techniques and the proper use of deadly force after previous instances that demonstrated the need for policy revisions and additional training. The ambiguous use-of-force policy and the lack of training were the "moving force" behind the deputies' use of deadly force in this case. And the alleged deliberate indifference of Sheriff Salazar as policymaker is his failure to revise a policy

---

[5] *See, e.g., Amador v. Bexar Cty.*, No. 5:15-CV-810-RP, 2017 U.S. Dist. LEXIS 168453, 2017 WL 4562895 (W.D. Tex., Oct. 11, 2017); *Batyukova v. Doege*, No. 5:19-cv-0391-JKP-ESC, 2020 U.S. Dist. LEXIS 85713 (W.D. Tex. May 15, 2020).

that he acknowledges is ambiguous, his failure to discipline deputies or provide remedial training after improper use-of-deadly-force incidents, and his failure to implement the training in de-escalation and defensive tactics that he mandated. *ECF No. 62, pars. 64, 66, 73, 79-80*. Accordingly, Plaintiffs have satisfied the pleading requirements and the motion to dismiss the *Monell* claim is DENIED.

### D. Punitive Damages

Punitive damages may be awarded in § 1983 cases involving egregiously harmful intent, callousness or recklessness. As articulated by the Supreme Court:

> a jury may be permitted to assess punitive damages in an action under 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. We further hold that this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness.

*Smith v. Wade*, 461 U.S. 30, 56 (1983). *Accord Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990) (noting that "punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be . . . the question of whether punitive damages should be awarded is one left to the finder of fact"). Accordingly, the Court DENIES the motion to dismiss Plaintiffs' request for punitive damages.

### E. Section 101.106(e)

"If a suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). A government employee sued individually may be dismissed upon his motion or by plaintiff's amended pleading substituting the governmental unit as defendant. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013). The operative pleading in this matter names Bexar County and specifies that the state law claims are brought solely against

Bexar County. *ECF No. 62, par. 3*. Accordingly, the motion to dismiss Sheriff Salazar and the deputy Defendants under § 101.106(e) is DENIED AS MOOT.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Dismiss. *ECF No. 64*.

This case is set for status conference before the undersigned on **March 16, 2021 at 1:00 PM** via Zoom. Counsel who have not received the Zoom link within 48 hours of the scheduled conference should contact Magda Muzza, the Courtroom Deputy. Ms. Muzza can be reached at (210) 244-5021 or Magda_Muzza@txwd.uscourts.gov.

**It is so ORDERED this 3rd day of March 2021.**

JASON PULLIAM
UNITED STATES DISTRICT JUDGE